**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-2203-WJM-NYW
*Consolidated with Civil Action Nos. 19-cv-2205 & 19-cv-2208*

WEIHONG MA,
MEI CI MA,
QUAN SHENG MA, and
RESTORATION ENTERPRISES, LLC,

      Plaintiffs,

v.

AUTO-OWNERS INSURANCE COMPANY,

      Defendant.

---

**ORDER GRANTING DEFENDANT AUTO-OWNERS INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT AND VACATING AS MOOT THE
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

---

This consolidated civil action arises out of an insurance dispute and is before the

Court on Defendant Auto-Owners Insurance Company's ("Auto-Owners") Motion for

Summary Judgment ("Motion").  (ECF No. 55.)  Plaintiffs Weihong Ma ("Mr. Ma"), Mei Ci

Ma ("Ms. Ma"), Quan Sheng Ma ("Mr. Quan Ma"), and Restoration Enterprises, LLC

("Restoration") (collectively, "Plaintiffs") responded in opposition (ECF No. 65), and

Auto-Owners replied (ECF No. 77).

Also before the Court is the November 9, 2020  Recommendation of the United

States Magistrate Judge ("Recommendation") on Auto-Owners's Motion for Sanctions

for Plaintiff Mei Ci Ma's Failure to Comply with Court Orders and Appear for Deposition

[ECF No. 61] ("Motion for Sanctions").  (ECF No. 80.)  Auto-Owners objected to the

Recommendation.  (ECF No. 81.)  Plaintiffs did not object to the Recommendation.

For the following reasons, the Motion is granted, and the Recommendation is vacated as moot.

## I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND

### A.    Introduction

On May 8, 2017, a hailstorm caused property damage to real property owned by Mr. and Ms. Ma in Denver, Colorado, real property owned by Mr. Quan Ma in Wheat Ridge, Colorado, and real property owned by Mr. and Ms. Ma in Thornton, Colorado (collectively, the "Properties").  (ECF No. 2 ¶¶ 1, 6; ECF No. 19 ¶¶ 1, 6; ECF No. 24

¶¶ 1, 6.)  At the time of the hailstorm, Auto-Owners insured each property under separate policies.  (ECF No. 2 ¶ 5;  ECF No. 19 ¶ 5; ECF No. 24 ¶ 5.)  Plaintiffs (excluding Restoration) filed individual claims for each Property.  (ECF No. 2 ¶ 7; ECF No. 19 ¶ 7; ECF No. 24 ¶ 7.)  Auto-Owners sent adjusters to inspect each property individually, and disputes soon arose between Auto-Owners and Plaintiffs as to the amount of damages and costs of repairs for the Properties.  (ECF No. 2 ¶¶ 8–17; ECF No. 19 ¶¶ 8-17; ECF No. 24 ¶¶ 8-17.)

**B.     Material Facts[1]**

1.     Denver Claims[2]

Mr. and Ms. Ma are the owners of a commercial property located at 2630 West Alameda Avenue, Denver, Colorado 80219 ("Denver Property").  (ECF No. 55 ¶ 1.) This property was covered under a commercial insurance policy (Tailored Protection Policy, Policy Number 134632-74073749-16), issued by Auto-Owners to Mr. and Ms. Ma, with effective dates from October 31, 2016 through October 31, 2017.  (*Id.* ¶ 2.) Approximately nine months after the hailstorm, on February 7, 2018, Mr. and Ms. Ma filed a claim with Auto-Owners for alleged hail damage to the Denver Property.  (*Id.* ¶ 4.)

On February 7, 2018, Auto-Owners sent correspondence to Named Insureds Weihong Ma and Mei Ci Ma requesting that they complete a "Sworn Statement in Proof of Loss" form ("Proof of Loss") setting forth an itemized statement of the alleged hail

---

[1]  The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  Plaintiffs admit every fact set forth in Auto-Owners's Movant's Statement of Material Facts.  (ECF No. 55 at 5–13; ECF No. 65 at 3–5.)  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2] The Denver claims are brought in Civil Action No. 19-cv-2203-WJM-NYW.

damage being claimed at the Denver Property.  (*Id.* ¶ 5.)  On May 17, 2018, Auto-Owners requested that Restoration, Plaintiffs' contractor, provide a full and complete estimate for all repairs it believed were necessary at the property due to the alleged hail damage.[3]  (*Id.* ¶ 6.)  No response was provided.  (*Id.*)

On June 1, 2018, Auto-Owners requested a copy of Restoration's full estimate for claimed repairs at the Denver Property, which despite a representation by Brad Olson, the principal of Restoration, had never been provided.  (*Id.* ¶ 7.)  No response to Auto-Owners's request was provided.  (*Id.*)  On August 16, 2018, Restoration provided an invoice to Auto-Owners, which it stated was for the "entire project," with a total cost of repair of $177,021.55.  (*Id.* ¶ 8.)  On September 21, 2018, Auto-Owners requested that Restoration submit a Proof of Loss, as required under the policy, along with documentation supporting their claim.  (*Id.* ¶ 9.)  On November 2, 2018, Auto-Owners again requested that Restoration submit a sworn Proof of Loss, its full and complete estimate for all hail damage being claimed at the Denver Property, and a statement advising as to any disagreement it had with Auto-Owners's evaluation of this claim.  (*Id.* ¶ 10.)  No response was provided.  (*Id.*)

---

[3] While it is not entirely clear from the pleadings and briefs, it appears as though at some point, Plaintiffs assigned their claims to Restoration.  In connection with this issue, in the Motion, Auto-Owners anticipates that Plaintiffs "may seek to avoid the consequences of their collective failure to cooperate based on the assignments of their claims to [Restoration]."  (ECF No. 55 at 20.)  In the response, Plaintiffs do not dispute Auto-Owners's statements regarding any assignment to Restoration and make no other arguments related to any assignment.  (*See* ECF No. 65.)

Further, Auto-Owners argues that "[t]he assignments simply serve to impose the same duty of cooperation on [Restoration], which now affirmatively 'stands in the shoes of the assignor.'"  (ECF No. 55 at 20 (citing *Dean Witter Reynolds Inc. v. Variable Annuity Life Ins. Co.*, 373 F.3d 1100, 1110 (10th Cir. 2004)).)  Again, Plaintiffs do not dispute this point.  (*See* ECF No. 65.)

On December 3, 2018, Auto-Owners again requested that Restoration provide a sworn Proof of Loss and supporting documents.  (*Id.* ¶ 11.)  On December 12, 2018, Restoration submitted a Proof of Loss form, without any explanation or supporting documents, in which it claimed a total repair cost for alleged hail damage at the Denver Property for $350,000.  (*Id.* ¶ 12.)  On January 17, 2019, Auto-Owners requested that Restoration provide documentary support for the dollar amounts set forth in its Proof of Loss.  (*Id.* ¶ 13.)  No response was provided.  (*Id.*)  On March 7, 2019, Auto-Owners sent out a follow-up letter to Restoration requesting documents supporting the figures contained in its Proof of Loss.  (*Id.* ¶ 14.)  No response was received.  (*Id.*)

On May 8, 2019, Plaintiffs filed suit against Auto-Owners, bringing claims for breach of contract, common law bad faith breach of contract, and unreasonable delay or denial of the claim in violation of Colorado Revised Statutes, §§ 10-3-1115 and 10-3-1116.  (*Id.* ¶ 15; ECF No. 2.)  Plaintiffs allege that Auto-Owners underpaid their claim and refused to issue a full and fair payment for the covered loss.  (ECF No. 2 ¶ 12.)  On July 31, 2019, Auto-Owners filed its Answer.[4]

On December 6, 2019, approximately seven months after suit was filed, as part of their initial disclosures required by Federal Rule of Civil Procedure 26(a)(1), Plaintiffs provided what was represented to be a full estimate for all hail damage being claimed at the Denver Property.  (ECF No. 55 ¶ 16.)  However, this estimate had never been provided to Auto-Owners prior to the commencement of litigation.  (*Id.*)

On June 1, 2020, approximately thirteen months after suit was filed and over

---

[4] The parties did not file the Answers in any of these cases on the docket.  The Court located the Answers for all three cases on their respective state court dockets.

three years after the hailstorm, Plaintiffs provided an increased estimate from a retained expert seeking additional damages. (*Id.* ¶ 17.) This estimate for the Denver Property had never been provided to Auto-Owners prior to the commencement of litigation. (*Id.*)

2.     Wheat Ridge Claims[5]

Mr. Quan Ma is the owner of this commercial property located at 5280 W 38th Ave, Wheat Ridge, Colorado 80212 ("Wheat Ridge Property"). (*Id.* ¶ 18.)[6] This property was covered under a commercial insurance policy (Tailored Protection Policy, Policy Number 164632-74768430-16), issued by Auto-Owners to Quan Sheng Ma, with effective dates from June 22, 2016 through June 22, 2017. (*Id.* ¶ 19.) Approximately two and a half months after the hailstorm, on June 29, 2017, Mr. Quan Ma filed a claim with Auto-Owners for alleged hail damage to the Wheat Ridge Property. (*Id.* ¶¶ 20–21.)

On December 27, 2017, Auto-Owners sent correspondence to Named Insured Quan Sheng Ma advising that it disagreed with the estimates provided by Restoration and advised that if he disagreed with Auto-Owners's estimate that he provide supporting documentation, including a proof of loss. (*Id.* ¶ 22.)

By letter dated October 17, 2018, Auto-Owners requested that Restoration provide a sworn Proof of Loss, including supporting documentation, setting forth the specific disagreements that it had with Auto-Owners's evaluation. (*Id.* ¶ 23.) No response was provided. (*Id.*) By letter dated November 2, 2018, Auto-Owners again requested a sworn Proof of Loss with supporting documentation, a final estimate for

---

[5] The Wheat Ridge Property claims are brought in Civil Action No. 19-cv-2205-WJM-NYW.

[6] Auto-Owners mistakenly wrote the address of the Denver Property in paragraph 18. The Court has written the address for the Wheat Ridge Property as pled in the Complaint. (ECF No. 19 ¶ 1.)

Restoration's complete scope of work, and a statement as to those items for which Restoration believed there was disagreement with Auto-Owners.  (*Id.* ¶ 24.)  No response was provided.  (*Id.*)

On December 14, 2018, Restoration provided a Proof of Loss, without any explanation or supporting documents, in which it set forth a total claimed repair cost of $240,000.  (*Id.* ¶ 25.)  On January 7, 2019, Auto-Owners sent correspondence to Restoration requesting supporting documentation for the dollar amounts set forth in its Proof of Loss.  (*Id.* ¶ 26.)  No response was provided.  (*Id.*)  On February 13, 2019, Auto-Owners sent further correspondence to Restoration requesting information and documents supporting its Proof of Loss.  (*Id.* ¶ 27.)  No response was provided.  (*Id.*)  By letter dated May 6, 2019, Auto-Owners again requested supporting information and documents for Plaintiffs' Proof of Loss.  (*Id.* ¶ 28.)  No response was provided.  (*Id.*)

On May 8, 2019, Plaintiffs filed suit against Auto-Owners, bringing claims for breach of contract, common law bad faith breach of contract, and unreasonable delay or denial of the claim in violation of Colorado Revised Statutes, §§ 10-3-1115 and 10-3-1116.  (*Id.* ¶ 29; ECF No. 19.)  Plaintiffs allege that Auto-Owners underpaid their claim and refused to issue a full and fair payment for the covered loss.  (ECF No. 19 ¶ 12.)  On July 31, 2019, Auto-Owners filed its Answer.

On January 24, 2020, over eight months after suit was filed, Plaintiffs provided what was represented to be a full estimate for all hail damage being claimed at the Wheat Ridge Property in response to Requests for Production served by Auto-Owners.  (ECF No. 55 ¶ 30.)  This estimate was never provided to Auto-Owners prior to the

commencement of litigation.  (*Id.*)

On June 1, 2020, approximately thirteen months after suit was filed and over three years after the hailstorm, Plaintiffs provided an increased estimate from a retained expert.  (*Id.* ¶ 31.)  This estimate was never provided to Auto-Owners prior to the commencement of litigation.  (*Id.*)

3.     Thornton Claims[7]

Mr. and Ms. Ma are the owners of this commercial property located at 8610 Washington Street, Thornton, Colorado 80229 ("Thornton Property").  (*Id.* ¶ 32.)  This property was covered under a commercial insurance policy (Tailored Protection Policy, Policy Number 164632-74130999-16), issued by Auto-Owners to Weihong Ma, with effective dates from July 1, 2016 through July 1, 2017.  (*Id.* ¶ 33.)

Just over two months after the hailstorm, on July 12, 2017, Mr. and Ms. Ma made a claim with Auto-Owners for alleged hail damage to the Thornton Property.  (*Id.* ¶¶ 34–35.)

On March 22, 2018, Auto-Owners requested that Restoration provide its final estimate and completion photos for the roof of the building such that recoverable depreciation could be released and this aspect of the claim closed out.  (*Id.* ¶ 36.) Restoration sent photos but did not provide an invoice.  (*Id.*)  On March 23, 2020, Auto-Owners again requested that Restoration provide its final invoice for the roof of the building.  (*Id.* ¶ 37.)

On August 7, 2018, despite never making a claim for alleged mold, Restoration provided Auto-Owners with and an invoice for mold remediation.  (*Id.* ¶ 38.)

---

[7] The Thornton Property claims are brought in Civil Action No. 19-cv-2208-WJM-NYW.

Nonetheless, Auto-Owners evaluated this claim and issued payment.  (*Id.*)

By letter dated March 14, 2019, received by Auto-Owners on March 29, 2019, Restoration demanded appraisal under the policy and requested that Auto-Owners enter into a tolling agreement.  (*Id.* ¶ 39.)  With this correspondence, Restoration submitted an unsigned Proof of Loss form, claiming $256,393.83 in damages, which was not itemized and did not include all necessary supporting documents as requested by Auto-Owners.  (*Id.*)  On April 22, 2019, Auto-Owners sent a letter to Restoration requesting documentary support for Plaintiffs' claims.  (*Id.* ¶ 40.)  No response was provided.  (*Id.*)

On May 9, 2019, Plaintiffs filed suit against Auto-Owners, bringing claims for breach of contract, common law bad faith breach of contract, and unreasonable delay or denial of the claim in violation of Colorado Revised Statutes, §§ 10-3-1115 and 10-3-1116.  (*Id.* ¶ 41; ECF No. 24.)  Plaintiffs allege that Auto-Owners underpaid their claim and refused to issue a full and fair payment for the covered loss.  (ECF No. 24 ¶ 13.)  On July 31, 2019, Auto-Owners filed its Answer.

On January 24, 2020, over eight months after suit was filed, Plaintiffs provided what was represented to be a full estimate for all hail damage being claimed at the Thornton Property in response to Requests for Production served by Auto-Owners.[8] (ECF No. 55 ¶ 42.)  This estimate was never been provided to Auto-Owners prior to the commencement of litigation.  (*Id.*)

_____

[8] Paragraph 42 of the Movant's Statement of Material Facts says the "Wheat Ridge Property," but the Court assumes this is a typographical error, as this section concerns the Thornton Property.  (ECF No. 55 at 13 ¶ 42.)  And as noted above, Plaintiffs do not dispute any material facts set forth by Auto-Owners.

On June 1, 2020, approximately thirteen months after suit was filed and over three years after the hailstorm, Plaintiffs provided an increased estimate from a retained expert. (*Id.* ¶ 43.)  This estimate was never provided to Auto-Owners prior to the commencement of litigation.  (*Id.*)

## C.      Applicable Policy Provisions[9]

The Tailored Protection insurance policies ("Policy" or "Policies") issued by Auto-Owners to Mr. Ma, Ms. Ma, and Mr. Quan Ma all contain identical language setting forth the coverage afforded under the policies, as well as the duties and obligations on the part of Mr. Ma, Ms. Ma, and Mr. Quan Ma, as Insureds.  (ECF No. 55 at 13; ECF No. 56-2; ECF No. 56-13; ECF No. 56-23 & 56-24.)  Each policy contains provisions requiring Mr. Ma, Ms. Ma, and Mr. Quan Ma to cooperate with Auto-Owners.

1.      <u>Cooperation Provisions</u>

**E. BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

\* \* \*

3.      Duties In the Event of Loss Or Damage

a. You must see that the following are done in the event of loss or damage to Covered Property:

\* \* \*

(2) Give us prompt notice of the loss or damage.  Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage

---

[9] In their response, Plaintiffs do not challenge Auto-Owners's statement of facts regarding the provisions and requirements contained in the Policies issued by Auto-Owners for the three properties at issue here.  (*See generally* ECF No. 65; *see* ECF No. 77 at 4.)

occurred.

* * *

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.  Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request.  We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

2.    Concealment, Misrepresentations, and Fraud Provisions

**Commercial Property Conditions**

A. Concealment, Misrepresentation, Or Fraud

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

D. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part.

**Colorado Changes – Concealment, Misrepresentation, or Fraud**

The CONCEALMENT, MISREPRESENTATION OR FRAUD
Condition is replaced by the following:

CONCEALMENT, MISREPRESENTATION OR FRAUD
We will not pay for any loss or damage in any case of:

> 1. Concealment or misrepresentation of a material
> fact; or

> 2. Fraud committed by you or any other insured
> ("insured") at any time and relating to coverage under
> this policy.

**D.    Procedural History**

Plaintiffs filed their cases in the Denver County District Court (the Denver

Property claims), the Jefferson County District Court (the Wheat Ridge Property claims),

and the Adams County District Court (the Thornton Property claims).  (ECF Nos. 2, 19,

24.)

On August 2, 2019, Auto-Owners removed these actions to this Court pursuant

to 28 U.S.C. § 1332 (ECF No. 1); *Ma et al. v. Auto-Owners Insurance Company*, Civil

Action No. 19-cv-02205, (ECF No. 1); *Ma et al. v. Auto-Owners Insurance Company*,

Civil Action No. 19-cv-02208, (ECF No. 1).  The undersigned consolidated these civil

actions on October 4, 2019.  (ECF No. 17.)

### III. ANALYSIS

In the Motion, Auto-Owners moves for summary judgment on Plaintiffs' claims

regarding the Thornton Property, arguing the case is barred by the statute of limitations.

(ECF No. 55.)  Additionally, Auto-Owners moves for summary judgment on Plaintiffs'

claims regarding the Denver, Wheat Ridge, and Thornton Properties, arguing Plaintiffs'

failure to cooperate with its investigation of these claims means they have forfeited their

right to recover.  (*Id.*)  The Court addresses these arguments in turn.

A.    **Thornton Property**

"Statutes of limitations are enacted to promote justice, prevent unnecessary delay, and preclude stale claims."  *Trigg v. State Farm Mut. Auto. Ins. Co.*, 129 P.3d 1099, 1101 (Colo. App. 2005).  "Whether a statute of limitations bars a particular claim is a question of fact."  *Id.* (citing *Keller Cattle Co. v. Allison*, 55 P.3d 257 (Colo. App. 2002)).  However, if undisputed facts demonstrate that the plaintiff had the requisite information as of a particular date, then the issue of whether the statute of limitations bars a particular claim may be decided as a matter of law.  *Id.* (citing *Salazar v. Am. Sterilizer Co.*, 5 P.3d 357 (Colo. App. 2000)).

The Policies provide that "No one may bring a legal action against us under this Coverage Part unless . . . (2) [t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred."  (ECF No. 56-2 at 93; ECF No. 56-13 at 91; ECF No. 56-23 at 32.)  The hailstorm that allegedly damaged the Thornton Property occurred on May 8, 2017.  (ECF No. 55 at 12 ¶ 34.)  Accordingly, the statute of limitations for each claim is May 8, 2019.

Auto-Owners argues that the Thornton Property Claim is barred by the two-year statute of limitations period set forth in the Policies.  (ECF No. 55 at 22–23.)  Plaintiffs filed the Complaint alleging damage to the Thornton Property on May 9, 2019, one day after the applicable statute of limitations.  (ECF No. 24.)

In response to Auto-Owners's argument, Plaintiffs do not dispute that the applicable statute of limitations is two years or that the Complaint was filed one day after the applicable statute of limitations.  (ECF No. 65 at 7–8.)  Rather, Plaintiffs state that they filed their lawsuit in connection with the Thornton Property on May 8, 2019 in Adams County District Court, but that the software used to generate the Complaint

13

incorrectly listed "Thornton, Colorado" in the second line of the caption, instead of "Brighton, Colorado." (*Id.* at 7.)  Therefore, the Clerk rejected the Complaint for fear of confusing anyone. (*Id.*)  Plaintiffs state that the Clerk recommended attaching a cover sheet to the refiled complaint explaining the situation and asking that the May 8, 2019 date be considered the filing date. (*Id.*)

According to Plaintiffs, counsel "followed these instructions and filed the original complaint once again." (*Id.*)  Given the foregoing, Plaintiffs argue that the "evidence demonstrates that the filing was timely filed," and "any dispute regarding the filing date is attributable to the actions of the state court." (*Id.*)  Therefore, Plaintiffs argue that the Court should find the Complaint was timely filed within the limitations period. (*Id.* at 7–8.)

The Court disagrees.  Importantly, Plaintiffs neither cite nor provide any evidence to support their argument. (*See id.*)  They offer no evidentiary support for the fact that they asked the Adams County District Court to consider the Complaint timely filed, much less any evidence that the Adams County District Court granted such request. Moreover, Plaintiffs do not provide an affidavit from their attorney, the clerk who made the alleged recommendation, or even themselves to support their argument.  In addition, they cite no statute or case law that would excuse their late filing.  They make no argument that equitable tolling applies here.  They simply rely on the wholly unsupported argument of their counsel.

Upon due consideration, the Court finds that Plaintiffs' lawsuit in connection with the Thornton Property is barred by the statute of limitations and will be dismissed.

**B.     Denver Property and Wheat Ridge Property**

1.     Breach of Contract Claims

Plaintiffs assert claims for breach of the Policies based on Auto-Owners's alleged

failure to pay benefits owed as a result of the hailstorm.  In its Answers to each

Complaint, Auto-Owners raises the affirmative defense of failure to cooperate, arguing

that "Plaintiffs' claims may be barred . . . by . . . duties, obligations, and requirements on

the part of the Plaintiffs to provide Auto-Owners with requested information and

documents; and the duty of Plaintiffs to cooperate with Auto-Owners regarding their

claim, including the timely provision of necessary information and documents."[10]  Solely

for the purposes of deciding this Motion, the Court assumes that Plaintiffs have

established the elements of their breach of contract claims, and proceeds to the

question of whether there is a genuine issue of material fact regarding whether Auto-

Owners has satisfied its affirmative defense of failure to cooperate.

"A cooperation requirement in an insurance policy is 'valid and enforceable.'"

*Windhorst v. State Farm Mut. Auto. Ins. Co.*, Court of Appeals No. 11CA1045, at 11

(Colo. App. May 24, 2012)[11] (quoting *Farmers Auto. Inter–Insurance Exch. v. Konugres*,

202 P.2d 959, 962 (1949)).[12]  "Importantly, whether there has been cooperation on the

---

[10] As noted above, Auto-Owners did not provide its Answers with its Notices of Removal, requiring the Court to locate them independently.  Moreover, in the Motion, Auto-Owners did not characterize its argument as an affirmative defense or otherwise point the Court toward its Answers as the source of this defense.  Equally unhelpful, Plaintiffs also did not describe the arguments in terms of an affirmative defense in their response.

[11] This Colorado Court of Appeals opinion is unpublished, and neither Westlaw nor LexisNexis provide a full copy of the opinion.  Nonetheless, the Court has obtained a copy of the opinion from the state court docket and cites to the page numbers of that document.

[12] In conducting legal research, the Court became aware that effective September 14, 2020, Colorado enacted Colorado Revised Statute § 10-3-1118, "Failure-to-cooperate defense," which explains the conditions which must be met before the failure to cooperate defense is

part of an assured with the company . . . is usually a question of fact." *Cribari v. Allstate Fire & Cas. Ins. Co.*, 375 F. Supp. 3d 1189, 1198 (D. Colo. 2019), *aff'd*, 2021 WL 2255008 (10th Cir. June 3, 2021) (quoting *Konugres*, 202 P.2d at 963) (internal quotation marks and alterations omitted); *see also Hansen v. Barmore*, 779 P.2d 1360, 1364 (Colo. App. 1989) ("Generally, the question of whether the insured has violated his insurance policy by failing to cooperate with the insurer is a question of fact for the trial court.").

"Non-cooperation constitutes breach only if material and substantial disadvantage to the insurer is proved." *Id.* (internal quotation marks and citation omitted). "[A]ny formal, inconsequential or collusive lack of cooperation will be immaterial." *Id.* (citation omitted). In addition, what might appear initially to be a breach of the cooperation clause "may be excused, if it develops that the failure of the assured was due to mistake, and that there was no exercise of bad faith on his part." *Id.* "However, where the facts are undisputed and only one reasonable inference may be drawn from them, cooperation may be resolved as a matter of law." *Windhorst*, Court of Appeals No. 11CA1045, at 11 (citing *ITT Specialty Risk Servs. v. Avis Rent A Car Sys., Inc.*, 985 P.2d 43, 46 (Colo. App. 1998) (addressing failure to give insurer timely notice of claim)).

In *Windhorst*, the court explained that "in a first-party claim where an insured seeks coverage for a loss already sustained, such prejudice is determined by whether

---

asserted in a court of law or an arbitration. However, this statute was enacted after the events at issue in these cases and does not apply to the Court's analysis of the Motion. The Court notes that neither party invokes this statute, provides it as supplemental authority, or argues that it applies to the analysis of the Motion.

the insurer has been able to complete a reasonable investigation with regard to whether the insured's claim is valid." *Id.*

> If the insured's refusal to cooperate prevents the insurer from completing such a reasonable investigation, prejudice should be found to exist. Specifically, it has been held that the insurer can deny coverage, following an insured's refusal to provide documents reasonably requested by the insurer, on the basis that the insurer has been prejudiced because the insured's refusal prejudices the insurer by putting the insurer in the untenable position of either denying coverage or paying the claim without the means to investigate its validity.

*Id.* (citing 1 *Insurance Claims and Disputes* 5th § 3:2).

Whether documents have been "reasonably requested" by an insurer depends on their materiality and relevancy. *Id.* (citing *Farmer v. Allstate Ins. Co.*, 396 F. Supp. 2d 1379, 1382–83 (N.D. Ga. 2005) (rejecting plaintiff's argument that financial information she failed to provide was not relevant: "Where an insurer suspects that a claim might be fraudulent, information relating to the insured's recent income and sources of income is material and relevant to the suspicion of fraud and to the insured's possible financial motive."); *Rymsha v. Trust Ins. Co.*, 746 N.E. 2d 561, 564 (Mass. App. Ct. 2001) (financial document was "material and relevant"); *Keith v. Allstate Indem. Co.*, 19 P.3d 1077, 1079–80 (Wash. Ct. App. 2001) (same)). Where the insured's failure to provide some of the requested records is undisputed, the court may determine their relevance to the insurer's investigation as a matter of law. *Id.* (citing *Doerr v. Allstate Ins. Co.*, 121 F. App'x 638 (6th Cir. 2005) (affirming trial court's determination that financial records requested by insurer and not provided by insured were relevant to insurer's investigation and failure to provide them breached insured's duty to cooperate)).

Here, Auto-Owners contends that Plaintiffs breached their duty of cooperation under the Policies, which materially and substantially disadvantaged Auto-Owners. (ECF No. 55 at 19.)  Specifically, Auto-Owners argues that it was not provided access to critical information relevant to Plaintiffs' property damage claims such that Auto-Owners was "put 'in the untenable position of either denying coverage,' without sufficient information, 'or paying Plaintiff's [sic] claim without the means to investigate its validity."  (*Id.* (citation[13] omitted).)

For support, Auto-Owners provides the Affidavit of Geoff Page, a Senior Claims Specialist employed by Auto-Owners, in which Page states that at no time prior to filing the three lawsuits at issue here did Plaintiffs ever provide Auto-Owners with estimates setting forth a full and complete statement of the alleged hail damage they claimed. (ECF No. 56-3 at 2 ¶ 4.)  Page states that for each of the three claims, Auto-Owners made numerous requests for information and documents supporting Plaintiffs' property damage claims, but no responses were provided.  (*Id.* at 3 ¶ 5.)  For example, Page explains Auto-Owners requested documents such as Sworn Statement in Proof of Loss forms, (*id.* at 4 ¶ 4), full and complete estimates for all repairs (*id.* at 5 ¶ 7), and other documentary support (*id.* at 6 ¶ 15).  Auto-Owners asserts that Plaintiffs either failed to provide the requested information, or provided incomplete, false, or misleading information in response to their requests for documentary support for Plaintiffs' claims. (ECF No. 55 at 19.)  Indeed, it was not until after Plaintiffs sued Auto-Owners that they produced the purported final estimate of their damages, and later provided an even

---

[13] Auto-Owners's citation to *Harris* is incorrect.  The correct citation is to *Windhorst*, Court of Appeals No. 11CA1045, at 12.

higher estimate of their damages in connection with their expert disclosures.  (*Id.*)

In response, Plaintiffs do not dispute that they had a duty to cooperate under the Policies.  (*See generally* ECF No. 65.)  In fact, Plaintiffs do not dispute any material facts set forth in Auto-Owners's Statement of Material Facts, nor do they offer their own statement of material facts in their response.  (*See id.*)  Instead, Plaintiffs argue that they "fully cooperated with Defendant's investigation into their claims."  (*Id.* at 6.)  For support, they cite their "production of Proof of Loss forms [Exhibit D], along with a multitude of additional documentation to assist Defendant in determining how and to what extent the loss occurred."  (*Id.* (citing ECF No. 65-4 (Exhibit D)).)

In addition, without citing any evidence, Plaintiffs argue that Auto-Owners "blatantly chose to disregard objective evidence of covered damage."  (*Id.*)  Plaintiffs contend that the "inability on the part of Defendant to locate and document the full extent of the covered hail and wind damage to the Property during the course of its inspections illustrates how inadequate and improper Defendant's conduct has been throughout its entire investigation."  (*Id.*)  Further, they emphasize that "the disparity in each party's estimates presents a glaring fact issue, namely Defendant's willful disregard for the objective evidence indicating severe hail and wind damage to the Property, such that summary judgment would not be an appropriate method for adjudicating Plaintiff's [*sic*] claim."  (*Id.*)  According to Plaintiffs, Auto-Owners's contention that its "underpayment on the claim" is sufficient "intentionally ignores its own egregious actions during the investigation."  (*Id.*)

Despite Plaintiffs' arguments—much of which are the conclusory arguments of counsel and are not supported by any competent evidence in the record—the Court

concludes that Auto-Owners has made a prima facie demonstration that Plaintiffs failed to cooperate under the terms of the Policies.  *See Polland v. State Farm Mut. Auto. Ins. Co.*, 2019 WL 10258801, at *7 (D. Colo. Oct. 25, 2019), *reconsideration denied*, 2020 WL 6799934 (D. Colo. Nov. 19, 2020) (granting summary judgment in insurer's favor where insured's failure to cooperate materially and substantially disadvantaged insurer). As summarized in detail above, Auto-Owners has demonstrated, and Plaintiffs do not dispute, that they sent numerous requests for documents and additional support that Plaintiffs either did not respond to, or when Plaintiffs did respond, they provided insufficient information for Auto-Owners to evaluate the claims.

Under these circumstances, "the burden shifts to [Plaintiffs] to put forth sufficient evidence that a reasonable jury could find that [they] did not fail to cooperate under the terms of [their Policies]."  *Id.* (citing *Anderson*, 477 U.S. at 248).  For the following reasons, the Court finds that Plaintiffs have failed to provide any competent summary judgment evidence beyond mere conclusory statements and attorney argument which directly speak to this issue, and thus, have not carried their burden.

As noted above, to support their position, Plaintiffs point to Exhibit D.  (ECF No. 65 at 6 (citing ECF No. 65-4).)  However, Exhibit D consists of only two pages: two Sworn Statements of Proof of Loss, one for the Wheat Ridge Property and one for the Thornton Property.  (*Id.*)  The exhibit contains no additional information, such as a Proof of Loss form for the Denver Property.  Auto-Owners also highlights that the Proof of Loss form for the Thornton Property is undated and unsigned, and neither form upon which Plaintiffs rely was submitted with all necessary supporting documents.  (ECF No. 77 at 5.)  While Plaintiffs state in a conclusory manner that their cooperation included

the production of a "multitude of additional documentation to assist Defendant in determining how and to what extent the loss occurred," they identify no such documentation in the record other than Exhibit D.  (ECF No. 65 at 6.)

In addition, Plaintiffs assert that a genuine issue of material fact exists because of the disparity in the parties' estimates.  (ECF No. 65 at 6.)  Specifically, Plaintiffs argue that

> Defendant asks this Court to disregard the disparities between the parties estimate amounts, as well as Defendant's clearly inadequate method of investigation, by arguing that its underpayment on the claim is sufficient. Defendant's contention intentionally ignores its own egregious actions during the investigation.  Specifically, Plaintiff has [*sic*] provided Defendant with objective evidence that related to the actual cost of the necessary repairs to the Properties.  Plaintiff's [*sic*] objective evidence, including their estimate prepared by Plaintiffs' own contractor and retained cost expert, Caid Riggin, establishes the true cost of Plaintiff's [*sic*] necessary repairs.  *See* Ex. A; Ex. B; Ex. C. [ECF Nos. 65-1, 65-2, and 65-3.]  Despite receiving Plaintiff's [*sic*] evidence establishing a covered loss, Defendant has chosen to disregard these objective facts in order to avoid making proper payment to Plaintiffs.

(*Id.* at 6–7.)

As an initial matter, Plaintiffs fail to point the Court toward evidence showing such a disparity, and the Court will not comb the record for such evidence.[14]  *See McKinzy v. I.R.S.*, 367 F. App'x 896, 897 (10th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs." (citing *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995))).  Moreover, Plaintiffs cite no cases supporting the argument that a mere disparity in the estimates creates a genuine issue of material fact which precludes

---

[14] Regardless, even if Plaintiffs had specifically identified the disparity in numbers, it would not change the outcome here.

summary judgment.  In fact, they cite no cases at all regarding failure to cooperate, much less cases that support their position.

But even setting aside these critical deficiencies in Plaintiffs' argument, they miss the point.  The disparity in estimates on which Plaintiffs now rely arose only *after* they filed the three lawsuits against Auto-Owners and obtained Riggin's expert opinion.  In *Windhorst*, the plaintiff made a similar argument as Plaintiffs do here, asserting that the defendant received most or all of the disputed medical records through disclosure in the lawsuit, before moving for summary judgment.  *See Windhorst*, Court of Appeals No. 11CA1045, at 17.  However, the court concluded that "[e]ven so, this would not cure the prejudice," because by that time, the defendant was defending the plaintiff's claims based on its alleged failure to timely process and pay her UM/UIM benefits.  *Id.*  Had the plaintiff provided all relevant records or identified allegedly irrelevant records in a privilege log (during the investigation), the defendant could have made an informed offer on the claim and possibly avoided the lawsuit.  *Id.*

Like the defendant in *Windhorst*, during its investigation, Auto-Owners did not have the information initially requested to properly adjust the claim and—as Plaintiffs admit—did not have these other estimates until after Plaintiffs filed suit.  Given the foregoing, the Court finds that there is no genuine issue of material fact as to whether Plaintiffs failed to cooperate.

Next, the Court examines whether Auto-Owners suffered a material and substantial disadvantage as a result of Plaintiffs' failure to cooperate.  *See Polland*, 2019 WL 10258801, at *6 ("The failure to cooperate is a breach of the insurance contract only if the insurer suffers a material and substantial disadvantage.") (citation

and alterations omitted); *Walker v. State Farm Fire & Cas. Co.*, 2017 WL 1386341, at *3 (D. Colo. Feb. 23, 2017), *report and recommendation adopted*, 2017 WL 1386346 (D. Colo. Mar. 17, 2017) (granting summary judgment in favor of insurer, which suffered material and substantial disadvantage as a result of insured's failure to cooperate).

The cooperation provisions in the Policies specifically provide that the insureds must provide "a description of how, when and where the loss or damage occurred," "send . . . a signed, sworn proof of loss containing the information we request to investigate the claim," and "cooperate with us in the investigation or settlement of the claim." (*See supra*, Part II.B.) As previously explained, Auto-Owners made repeated requests to Plaintiffs for documentary support for their claims of hail damage. Either no response or inadequate responses were provided. Plaintiffs do not argue that the requests were unreasonable in any way or that that they were somehow precluded from providing adequate responses. (ECF No. 65.) Instead, Plaintiffs merely contend in a conclusory manner that they "fully cooperated" and "provided documents to the Defendant when received." (*Id.* at 6.) However, other than Exhibit D, they cite no evidence supporting the statement that they provided such documents. (*Id.*)

Despite Plaintiffs' conclusory arguments and deflections regarding Auto-Owners's unsubstantiated "egregious" behavior, the Court finds that Plaintiffs' failure to cooperate "prejudice[d] [Auto-Owners] by putting [Auto-Owners] in the untenable position of either denying coverage or paying the claim without the means to investigate its validity." *See Walker*, 2017 WL 1386341, at *8 (citation omitted); *State Farm Mut. Auto. Ins. Co. v. Secrist*, 33 P.3d 1272, 1275 (Colo. App. 2001) (explaining that an insurer has been materially and substantially disadvantaged where the insured has

acted in a way that has an "adverse effect on the insurer's defense, settlement, or other handling of the claim").  Thus, the Court concludes that Plaintiffs' failure to cooperate caused a material and substantial disadvantage to Auto-Owners, and consequently, Auto-Owners is entitled to summary judgment with respect to Plaintiffs' breach of contract claims.  *See Secrist*, 33 P.3d at 1275 (affirming summary judgment in insurer's favor where insured failed to respond to insurer's letters advising him of his duty to cooperate).

      2.    <u>Statutory Delay/Denial and Common Law Bad Faith Claims</u>

Plaintiffs also assert statutory delay/denial and common law bad faith claims. First, in Colorado, a person "engaged in the business of insurance shall not unreasonably delay or deny payment" to an insured.  Colo. Rev. Stat. § 10-3-1115(1)(a).  To establish a claim under § 10-3-1115, a plaintiff "must therefore show that: (1) benefits were owed under the policy and (2) defendant unreasonably delayed or denied payment of plaintiff's claim."  *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1201 (D. Colo. 2018).

Because there is no genuine issue of material fact as to whether Plaintiffs failed to cooperate, the Court finds that Auto-Owners's actions were reasonable as a matter of law.  *See Polland*, 2019 WL 10258801, at *7.  Further, because Plaintiffs' failure to cooperate "vitiates [their] coverage" under the Policies, and as a result Auto-Owners owes them no benefits, their statutory delay/denial claims fail as a matter of law.  *Id.*  As a result, the Court finds that Auto-Owners is entitled to summary judgment on Plaintiffs' statutory delay/denial claims.

Next, "[t]he requirements of a common law bad faith claim under Colorado law are heightened in comparison to those of a statutory bad faith claim."  *Nyborg v. State*

*Farm Mut. Auto. Ins. Co.*, 2021 WL 662305, at *3 (D. Colo. Feb. 19, 2021).  An insurer must deal in good faith with its insured.  *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496 (Colo. App. 2011) (citing *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004)).  "Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort."  *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004) (quoting *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)).  A plaintiff must show that the insurer's conduct was unreasonable and that the insurer acted with knowledge or reckless disregard that its conduct was unreasonable.  *See Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1272, 1274 (Colo. 1985).

Because the reasonableness of the insurer's conduct is an element of Plaintiffs' common law bad faith claims, and because it has been established that given Plaintiffs' failure to cooperate, Auto-Owners's conduct was reasonable as a matter of law, the Court finds that there is no genuine issue of material fact as to Plaintiffs' common law bad faith claims.  *See Polland*, 2019 WL 10258801, at *8 (finding defendant entitled to judgment as matter of law on plaintiff's common law bad faith claim where plaintiff failed to cooperate).  Thus, Auto-Owners is entitled to summary judgment on Plaintiffs' bad faith claims.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Defendant Auto-Owners Insurance Company's Motion for Summary Judgment (ECF No. 55) is GRANTED as follows:

2.     Civil Action No. 1:19-cv-2208-WJM-NYW is DISMISSED without prejudice, as it is barred by the applicable statute of limitations;

3.     The Clerk shall enter judgment in favor of Defendant and against Plaintiffs in Civil Action No. 1:19-cv-2203-WJM-NYW and Civil Action No. 1:19-cv-2205-WJM-NYW;

4.     Defendant shall have its costs reasonably incurred in all three actions upon compliance with D.C.COLO.LCivR 54.1;

5.     The Recommendation (ECF No. 80) on Defendant's Motion for Sanctions (ECF No. 61) are VACATED AS MOOT; and

6.     The Clerk shall terminate all three actions.


        Dated this 17th day of June, 2021.

                                        BY THE COURT:


                                        _____
                                        William J. Martinez
                                        United States District Judge